## In re Dunn

*George I. Puhak,* for petitioner.
*E. C. Marianelli,* contra.

VALENTINE, P. J., October 1945.—This is an application by Arthur Dunn for an order directing that his three minor children be placed under .the supervision of the Catholic Charities of Hazleton, Pa., that they may be placed in Catholic homes or in a Catholic institution.

The testimony taken on the hearing established the following facts:

The children involved are Arthur Dunn, Jr., born October 8, 1930; Laverne Dunn, born May 19, 1933, and James Dunn, born January 18, 1936.

At the time of the birth of the children the Dunn family resided on Division Street, Kingston. On March 31, 1934, the two children, Arthur, Jr., and Laverne, were baptized by Rev. Norman W. Clemens, pastor of the First Methodist Church of Kingston, and on March 28, 1937, the other child, James, was baptized by the same clergyman. The father freely consented to the action of the mother in having the children thus baptized.

In 1941 the father called at the office of the Luzerne County Institution District, stated that his wife had left, and requested that the Institution District take care of the three children. At this time the residence

of the family was North River Street, Wilkes-Barre. Pursuant to this request, the children were placed in the Home for the Friendless at Scranton. In 1942, the parents became reconciled and the children were taken to Philadelphia where the family resided until about May 26th of that year. The children were then sent by the father to the Institution District at Wilkes-Barre.

The father testified that in 1941 he "took the children over to the father at St. John's Church and had the three of them christened Catholic". When asked by the court as to his religious affiliation at the time the family lived in Kingston, and the children were baptized by a Methodist minister, he replied, "I never was a very good church member".

When the children were sent from Philadelphia in May 1942, the petitioner wrote the institution district saying: "I hope that the children will be placed in a Protestant home." This was the year following his alleged action in having the children christened by the pastor of the St. John's Catholic Church.

On August 28, 1944, the father, then a private in the United States Army, called at the office of the Luzerne County Institution District in Wilkes-Barre and made affidavit, in which he asserted, "that I am familiar with the religion of the Oliveri family in whose home my son James is being cared for and that I desire that the child remain in their care and that he be reared in the Protestant faith; that in the event that my wife, the mother of James, Laverne and Arthur returns, it is my desire that the said child be placed in her custody".

Later, September 13, 1945, he executed three written agreements (one for each child) setting forth, *inter alia*, that he "does hereby give and grant unto the said Catholic Charities, its successors and assigns, the care, custody and control of the said minor child hereby waiving and releasing all claims and demands of any

character as parent of the said child, and completely surrenders the said child to the said Catholic Charities for the purpose that the said child may be either retained as a charge of the said Catholic Charities, or may be placed for adoption by a person or persons found suitable in the exclusive judgment of the said Catholic Charities; . . ."

On April 30, 1945, the father procured (in this court) a divorce from the mother of the children. He remarried on August 1st of this year and is now living in New York.

It is quite apparent that he is not only willing, but anxious to be relieved from further responsibility for the children's maintenance, and that he has only a slight interest in their welfare. The divergent views expressed by him, and his inconsistent actions concerning the religious training of his children, furnish no guide for our decision. We think the controlling question for determination is what conclusion will be conducive to the best interests and future welfare of the children. The Act of June 2, 1933, P. L. 1433, sec. 10, 11 PS §252, provides that the court shall place a child, as far as possible, under the care, guidance and control of persons having the same religious belief as the parents of the child, or with some association or society which is controlled by persons of such religious belief.

The children, now in the care and custody of the United Charities of Hazleton, Pa., were called as witnesses. Arthur, the oldest, 15 years of age, testified that he did not want to be a Catholic and preferred attending the Protestant church. Laverne, who is 12 years of age, testified that she formerly attended a Protestant church in Hazleton, and that she does not want to go to the Catholic church. James, the youngest child, also said he preferred attending a Protestant church.

These children have not been reared in the atmosphere of the Catholic church. Had petitioner been

a faithful communicant of a church of such denomination, the case would present a different situation. However, the father not only permitted the children to be baptized by a Protestant minister, but requested, in writing, that they be placed in Protestant homes. His testimony sheds no light upon the reason for his change in viewpoint. Our own reaction is that he acted as he did, not because of his interest in the children being raised Catholic, but because he desired to relieve himself of his responsibility as a parent, and was willing to place the same upon a Catholic clergyman. The mother of the children was a Protestant. The father made no protest, or objection, to the children being baptized in this faith, and under all the circumstances, having due regard for the hitherto religious training and environment of the children, we conclude that no good purpose would be served by granting the request now made.

Application is denied.